IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 05-00055-01-CR-W-DW |
| CRAIG O. SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Before the Court is defendant's motion to suppress evidence and statements on the grounds that the evidence and statements were obtained incident to a warrantless arrest without probable cause.

*I. BACKGROUND*

On January 20, 2005, at approximately 12:25 a.m., Officers McGinness and Rhodes of the Kansas City, Missouri Police Department observed a vehicle leaving the immediate area of a reported domestic violence assault in progress. They could see two black males in the vehicle. The officers conducted a car check on the license number, and an ALERT came back indicating that a Reginald Herbert had in the past been arrested or issued a citation while driving that vehicle. Reginald Herbert was the name of the suspect in the reported domestic violence assault, so Officers McGinness and Rhodes stopped the vehicle. The officers who had responded to the address of the reported assault verified that the two individuals in the vehicle were involved in the disturbance at that location. Officer McGinness approached the driver of the vehicle, later identified as the defendant Craig Scott, while Officer Rhodes approached the passenger, identified as Reginald

1

Herbert. When Officer McGinness made contact with the defendant, he smelled alcohol and noted that the defendant's eyes were watery and bloodshot. The passenger Mr. Herbert appeared to be more intoxicated that the defendant. At that point, the officers at the scene of the reported domestic violence indicated that the victim was not being cooperative and no assault had occurred. Officer McGinness proceeded to conduct an investigation for driving while intoxicated and asked defendant to submit to a field sobriety test. The officer administered the Horizontal Gaze Nystagmus Test, which defendant failed with six out of a possible six points indicating intoxication. While Officer McGinness was conducting the investigation, he noted that defendant's speech was slurred. Defendant also stated that he had had a couple of beers . The officers placed defendant under arrest for the suspicion of drunk driving. The officers decided to tow the vehicle the defendant was driving. Before the vehicle was towed, Officer McGinness conducted an inventory of the vehicle pursuant to standard police procedure. During the inventory, Officer McGinness found a 12-gauge shotgun shell lying in plain view behind the driver's seat. In the glove box was a .380-caliber handgun. The serial number on the gun came back stolen out of Arkansas. The defendant was place under arrest for suspicion of drunk driving.

Defendant filed a motion to suppress evidence and statements on March 18, 2005. On April 13, 2005, I conducted an evidentiary hearing on this motion. The government appeared by Assistant United States Attorney Stefan Hughes. The defendant was present, represented by Assistant Federal Public Defender Anita Burns. The government called Officer Jonathan McGinness of the Kansas City, Missouri Police Department to testify. In addition, the following exhibits were marked and admitted into evidence:

    Government's Exhibit 1: KCMPD General Towing Requirements
    Defendant's  Exhibit 2: January 20, 2005 Police Report

Government's Exhibit 3: KCMPD Content Inventory Policy

Court's Exhibit 1: Physical Evidence/Property Inventory Report

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On January 20, 2005, Kansas City, Missouri Police Department received a call regarding a reported domestic violence assault in progress at a Kansas City address. (Tr. at 3.) At that time, Officer McGinness and his partner Officer Rhodes were on patrol in the vicinity of that address. (Tr. at 4.) They observed a white Ford Ranger pickup truck leaving the immediate area. (Tr. at 4.) Two black males were in the vehicle. (Tr. at 4.)

2. The officers stopped the vehicle. (Tr. at 5.) At some point after observing the vehicle and before making contact with the subjects inside the vehicle, the officers conducted a car check on the vehicle. (Tr. at 4, 24.) At that time, the Department of Revenue database of vehicle registrations was down (Tr. at 40), but an ALERT came back on the vehicle indicating that an individual named Reginald Herbert had been arrested or issued a ticket while driving that vehicle. (Tr. at 5, 24-25.) The officers also made contact with the unit that had responded to the address of the reported domestic violence assault, Radio 231. (Tr. at 5.) The officers of Radio 231 verified that the two individuals in the vehicle were involved in the disturbance at that location. (Tr. at 5.) At that point, the two subjects were removed from the vehicle and placed in handcuffs. (Tr. at 5.) Officer McGinness identified the driver as the defendant Craig

3

Scott. (Tr. at 5-6.)

3. When Officer McGinness made initial contact with the defendant, he immediately noticed a moderate odor of alcohol and observed that defendant's eyes were watery and bloodshot. (Tr. at 6.) Based upon his experience in conducting more than 150 traffic stops on suspicion of intoxication, Officer McGinness believed defendant appeared to be intoxicated. (Tr. at 12-13.) He observed the passenger Mr. Herbert and believed that the passenger appeared to be more intoxicated that the defendant. (Tr. at 6, 13.) Mr. Herbert was so intoxicated that the officers had him sit on the ground. (Tr. at 31.) The arrest incident report does not contain any information about Mr. Herbert being intoxicated. (Tr. at 31; Dft's Ex. 2.)

4. Radio 231 then made contact with the officers and informed them that, although the defendant and Mr. Herbert were involved in the domestic call, the victim was not cooperative and there had been no assault. (Tr. at 7.) After learning that no assault had occurred, the officers uncuffed Mr. Herbert. (Tr. at 37.) They were concerned about allowing the defendant to get back in the car and drive off if he were intoxicated. (Tr. at 28.) They began an investigation for driving while intoxicated. (Tr. at 7.) They asked defendant to submit to a field sobriety test and subsequently administered the Horizontal Gaze Nystagmus Test. (Tr. at 7.)

5. The Horizontal Gaze Nystagmus Test involves observing a subject through a battery of exercises to look for signs of any kind of nystagmus, or involuntary twitching movement of the eyeball. (Tr. at 7-10.) In the first exercise, the subject is asked to track an object moving horizontally across his field of vision. (Tr. at 8.) The officer

4

checks for smooth pursuit in tracking the object—a marble rolling across a table top versus a marble rolling across sandpaper. (Tr. at 8-9.) A lack of smooth pursuit earns one point for each eye. (Tr. at 9.) In performing this test on defendant, the officer noted a lack of smooth pursuit in both eyes. (Tr. at 9.) In the second exercise, the officer checks for nystagmus at maximum deviation, or the farthest point from center the eye can track an object. (Tr. at 9.) If the eye starts twitching at maximum deviation, that earns one point for each eye. (Tr. at 9.) Defendant had nystagmus in both eyes at maximum deviation. (Tr. at 10.) In the third exercise, the officer checks for nystagmus onset prior to maximum deviation. (Tr. at 10.) Defendant did have nystagmus onset prior to maximum deviation in both eyes, earning two more points. (Tr. at 10.) The test allows for six points, which is the worst score. (Tr. at 10.) Failure is four points or more. (Tr. at 46.) Defendant earned six points, and so failed the test. (Tr. at 10.)

6. Other than defendant's failure of the Horizontal Gaze Nystagmus Test, Officer McGinness observed other indications of intoxication. (Tr. at 10.) During the investigation, defendant's speech was slurred. (Tr. at 10.) His eyes were watery and bloodshot. (Tr. at 10.) Defendant also stated that he had had a couple of beers. (Tr. at 10-11.) After making these observations, Officer McGinness placed defendant under arrest for suspicion of drunk driving. (Tr. at 11.)

7. At the point when defendant was arrested, Officers McGinness and Rhodes decided to tow the vehicle defendant was driving. (Tr. at 11.) The vehicle was blocking a drive to a business, and it was uninsured. (Tr. at 47.) Their primary basis for this

5

decision was that the driver was intoxicated, their observation that the passenger Mr. Herbert was more intoxicated than the defendant, and the dictates of the General Towing Requirements of the Kansas City Police Department. (Tr. at 11, 14, 47.) Those towing requirements specify that a vehicle shall be towed when it is stopped on a car stop, traffic violation, or DUI checkpoint and the owner/operator is determined to be intoxicated. (Tr. at 12; Gov't Ex. 1.) The requirements allow that the vehicle may be released to any passenger or other person with the owner/operator's consent, so long as they are licensed, capable, responsible, and not intoxicated, as determined in the officer's discretion. (Tr. at 13; Gov't Ex. 1.) The defendant was never given the option of releasing the vehicle to another person or authorizing the vehicle to be left where it was. (Tr. at 33.)

8. Before the vehicle was towed, Officer McGinness conducted an inventory of the vehicle. (Tr. at 14.) The inventory was conducted consistent with standard police procedures, as specified in the Kansas City, Missouri Police Department policy statement Towing Protective Custody of a Vehicle and Content. (Tr. at 14-15.) The policy provides that a content inventory is a detailed inventory and listing of items located inside of a vehicle being towed, and is required for the towing and protective custody of all vehicles. (Tr. at 16; Gov't Ex. 3.) Officer McGinness was acting pursuant to the dictates of this policy when he conducted the inventory search of the vehicle defendant was driving. (Tr. at 15.)

9. While conducting the inventory of the vehicle, Officer McGinness found a 12-gauge shotgun shell, located behind the driver's seat in plain view on a vinyl casing running

6

the length of the vehicle. (Tr. at 16, 34.) He also recovered a Bryco .380-caliber handgun from the glove box. (Tr. at 16.) The glove box was locked, and was opened with the key found in the ignition. The officers asked defendant if the gun belonged to him, and he said no. (Tr. at 36.) Mr. Herbert also denied that the gun belonged to him. (Tr. at 36.)

10. The passenger Mr. Herbert had been un-handcuffed prior to the inventory of the vehicle. (Tr. at 16.) When Officer McGinness found the shotgun shell and the handgun, Mr. Herbert was re-handcuffed. (Tr. at 16.) The officers removed the gun from the vehicle and ran the serial number on the gun. (Tr. at 16.) The gun came back through NCIC as stolen out of Arkansas. (Tr. at 17.) The officers contacted the Robbery Unit at police headquarters to find out what the Robbery officers wanted them to do. (Tr. at 17.) The call was forwarded to Detective Blehm in the Homicide Unit, who checked the criminal records of the defendant and Mr. Herbert for any felony convictions. (Tr. at 17.) Both defendants were convicted felons, and Detective Blehm indicated that he would approve the arrest approval form to place both of them on 20-hour investigative hold for questioning. (Tr. at 18.)

11. At that time, the officers did not know who owned the gun. (Tr. at 18.) At the time the officers first made contact with the defendant, they did not know he was a convicted felon. (Tr. at 18.) The officers did not know anything about the specific circumstances of the domestic violence call that would lead them to believe that the suspects may have been armed. (Tr. at 19.)

12. Defendant was placed under arrest and taken to the Metro Patrol Station for

7

processing on the suspicion of drunk driving. (Tr. at 19.) Defendant refused a Breathalyzer test. (Tr. at 29, 45.) Additional sobriety tests were performed at the station, including the one-leg stand and the walk-and-turn. (Tr. at 20.) Defendant failed both of those tests. (Tr. at 20.) Defendant was issued a DWI and a ticket for failing to provide proof of insurance. (Tr. at 37.) Mr. Herbert was not given a ticket. (Tr. at 38.)

13. At some point after January 20, 2005, and before the evidentiary hearing, Officer McGinnis ran the license number on the vehicle again and learned that the vehicle was registered to a female party with the last name Herbert. (Tr. at 25.) The officer did not know at the time of the car stop and arrest who was the registered owner of the car. (Tr. at 25.)

14. Officer McGinness did not Mirandize the defendant because he did not ask the defendant any questions. (Tr. at 43.) In arrests for Driving Under the Influence, officers at the station read the defendant an implied consent and *Miranda* rights. (Tr. at 43.)

### III. LEGAL ANALYSIS

Defendant argues that his arrest violated his rights under the Fourth Amendment to the United States Constitution, and that the evidence seized and statements obtained subsequent to his arrest should be suppressed. He argues that the officers had an improper investigative motive in deciding to tow the vehicle and conduct the inventory search. He states that the vehicle could have been secured and left on the street, or released to Mr. Herbert or a third party.

The government responds that the officers in this case had a reasonable suspicion to support

8

an investigatory stop of the vehicle. The search of the vehicle, the government argues, was lawful as a search incident to arrest and as an inventory search pursuant to standard police procedures.

*A. Lawful Arrest*

Defendant cites no authority to support his contention that his arrest violated his Fourth Amendment rights. The well-established rule of *Terry v. Ohio* states that police need only a reasonable suspicion of criminal activity to support an investigatory stop. *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005); *see also United States v. Thompson*, 906 F.3d 1292, 1295 (8th Cir. 1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). The government must point to specific, articulable facts that reasonably suggest a crime. *Bustos-Torres*, 396 F.3d at 942. In determining the reasonableness of a warrantless arrest, the court looks to the totality of the circumstances to ascertain whether a prudent person would believe that the person had committed or was committing a crime. *United States v. Cornelius*, 391 F.3d 965, 968 (8th Cir. 2004.)

In this case, Officers McGinness and Rhodes had a reasonable, articulable suspicion of criminal activity upon seeing the pickup truck driven by the defendant leaving the immediate area of a domestic violence call. The officers, acting in an abundance of caution, followed the vehicle for a short distance and made a car stop. Before making contact with the individuals in the car, the officers ran the license number and obtained an ALERT notice relating to one of the suspects on the domestic violence assault. They also obtained verification from the officers responding to the domestic call that the individuals in the car were involved in the reported assault. The car was clearly associated with at least one person who was alleged, by name, to be involved in a domestic disturbance and possibly violent crime. The totality of these circumstances provided ample justification for the officers stopping the vehicle and investigating, at a minimum, the identity of the

9

subjects.

Once Officer McGinness made contact with the defendant, who was driving the vehicle, he became suspicious that the defendant was intoxicated. This suspicion was reasonable, based on indicators such as the moderate odor of alcohol about defendant's person and his watery and bloodshot eyes. The suspicion of intoxication permitted Officer McGinness to continue to detain defendant, even after the officers received notification that there was no assault to investigate.

Officer McGinness's investigation of defendant's sobriety subsequently gave rise to probable cause to arrest him for drunk driving. Defendant failed the Horizontal Gaze Nystagmus Test, scoring six out of a possible six points indicating intoxication. His speech was slurred, and he admitted to drinking a couple of beers. These factors, combined with the officer's earlier observation of an alcohol odor and defendant's bloodshot, watery eyes, would lead any reasonably prudent person to believe the defendant had been drinking to the point where his blood-alcohol content exceeded maximum levels set by the state for unimpaired driving. Nothing about the officers' detention and investigation of defendant, or his subsequent arrest, violated defendant's Fourth Amended right to be free from unreasonable seizure.

### B. Inventory Search

An inventory search incident to the impoundment of a vehicle is an exercise of the administrative or caretaking function of police, rather than their law enforcement function, and so is not subject to the warrant requirement or probable cause analysis of the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 369 n.5 (1976); *United States v. Davis*, 882 F.2d 1334, 1338 (8th Cir. 1989). Police may lawfully conduct a warrantless search of an impounded vehicle, if the search is designed to produce an inventory of the vehicle's contents. *United States v. Marshall*, 986

10

F.2d 1171, 1173-74 (8th Cir. 1993). Inventory searches must be reasonable under all the facts and circumstances of the particular case. *Id.* at 1174. Inventory searches conducted according to standardized police procedures are reasonable. *Id.* Such standardized procedures "vitiate concerns of an investigatory motive or excessive discretion." *Id.* Procedures that allow police officers the discretion to decide when to impound a car are permissible "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). When an inventory search is valid under the above analysis, the presence of an investigative motive does not invalidate it. *United States v. Garner*, 181 F.3d 991-92 (8th Cir. 1999).

Defendant argues that the impoundment and inventory search of the vehicle he was driving was improperly motivated by an investigative purpose and not consistent with the police role of caretaker of the streets. He argues that the police could have released the vehicle to the passenger Mr. Herbert or given him the option of calling a third party to take possession of the car, or they could have left the car secured on the street. He suggests that, once the officers learned that there was no domestic assault to investigate, their initial reason to stop the vehicle was eliminated. The inventory search, defendant states, therefore arose from an investigative motive to search the defendant's car for weapons.

Defendant's arguments are without merit. The officers in this case were clearly acting according to standardized police procedures in impounding the vehicle and conducting an inventory search of the contents. The officers had no knowledge of the defendant or his passenger prior to their encounter on January 20, 2005. They had no knowledge of the subjects' criminal history or any suspicion that there may have been weapons in the vehicle. Defendant suggests three unsafe or

11

impractical suggestions for what the officers could have done besides impounding the vehicle: (1) allow defendant to release the car to the passenger Mr. Herbert; (2) allow defendant to call a third party to come take possession of the vehicle; or (3) secure the vehicle and leave it on the street.

      The officers could not have released the vehicle to Mr. Herbert because the policies of the police department, and simple common sense, prohibited entrusting a vehicle to an individual they believed to be intoxicated. Moreover, the standardized towing policies of the police department required the vehicle to be towed. All vehicles in these circumstances are subject to impoundment. The officers had the discretion to allow the driver to make other arrangements for the vehicle, but nothing in the circumstances of this case suggests that an exception was warranted. The driver was intoxicated. The passenger, the only individual with a known connection to the vehicle, appeared to be even more intoxicated. Neither the defendant nor Mr. Herbert would be in any condition to return to the vehicle and drive it safely for many hours. The officers had no way of verifying who owned the car. The vehicle was apparently uninsured and it was blocking the drive to a business. Finally, it was literally the middle of the night—not the ideal time to abandon a vehicle on the street or to allow a subject to attempt to locate a third party to come take possession of it. Nothing in the facts of this case suggests that the officers had any investigative motive in deciding to tow the vehicle and subsequently to inventory its contents. The decision to impound the vehicle was reasonable and based on the standardized policies of the Kansas City, Missouri Police Department and the officers' own sense of their duties as caretakers of the streets and the public safety.

*C. Search Incident to Arrest*

12

When a police officer makes a lawful arrest of the occupant of an automobile, he may search the passenger compartment of the automobile, as well as any containers within the passenger compartment. *New York v. Belton*, 453 U.S. 454, 460 (1981)."Containers" subject to search include open or closed glove compartments, consoles or other receptacles, and luggage, boxes, or clothing in the passenger compartment. *Id.* at 460 n.4. The Eighth Circuit has read the bright line *Belton* rule as allowing the search of a locked glove compartment. *United States v. McCrady*, 774 F.2d 868, 871-72 (8th Cir. 1985). Such a search incident to arrest is reasonable even after the occupants have been arrested, removed from the vehicle, and secured. *Id.*

Defendant states that the search of defendant's vehicle cannot be justified as a search incident to arrest because such a search could encompass only the passenger area of the vehicle, while the officers in this case located the firearm in the locked glove box. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969) (holding that officers may search the area into which an arrestee might reach to grab a weapon or evidence); *United States v. Searcy*, 181 F.3d 975, 979 (8th Cir. 1999) (citing *New York v. Belton*, 453 U.S. 454 (1981)). The Supreme Court in *Belton* specifically discussed the rule of *Chimel* and held that the "grab area" of the occupant of a vehicle includes the entire passenger compartment of the vehicle, including glove boxes and other containers. *Belton*, 453 U.S. at 460. Defendant fails to consider the law in this circuit holding that locked glove boxes are also subject to search. Officer McGinness confined his search to the passenger compartment of the vehicle. Therefore, even if the search could not be justified as a proper inventory search, it was a valid search incident to the defendant's arrest.

For the above stated reasons, it is

RECOMMENDED that the court, after making an independent review of the record and the

13

applicable law, enter an order denying defendant's motion to suppress evidence and statements.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/Robert E. Larsen

ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 27, 2005